IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| PAUL K. HOWE, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:12-CV-238 |
| | § | |
| OFFICER JOHN DOE #1, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

The plaintiff, Paul K. Howe, is a former inmate of the Texas Department of Criminal Justice ("TDCJ") (TDCJ #01473851); and while he was incarcerated he filed this action under 42 U.S.C. § 1983, alleging that correctional officers failed to protect him from another inmate and retaliated against him. After Howe filed a more definite statement of his claims (Dkt. 16), the remaining defendants filed a motion to dismiss under Federal Rule of Civil Procedure 12(c) (Dkt. 71), to which Howe has not responded. Judge Hoyt stayed the case pending a ruling on the defendants' motion (Dkt. 75). The Court will now lift the stay and grant the defendants' motion in part and deny it in part.

I. **BACKGROUND**

Howe was assaulted by another inmate in his cell. On the morning of the assault, two correctional officers escorted Howe to the prison infirmary so that Howe could receive an insulin shot (Dkt. 1 at p. 4). While Howe was at the infirmary, three correctional officers incorrectly placed another inmate in Howe's cell because they failed

1

to check the inmate roster and the other inmate's identification card to see where the other inmate belonged (Dkt. 1 at p. 3). After Howe got his insulin shot, the officers put Howe in his cell and closed the door in preparation for the removal of Howe's handcuffs (Dkt. 1 at p. 4).[1] While the officers were getting ready to remove Howe's handcuffs, the other inmate emerged from underneath Howe's bed and began to beat Howe (Dkt. 1 at p. 4). Howe, who remembers little of the incident, was treated in the prison infirmary and then taken to a nearby hospital, where he was treated further in the emergency room (Dkt. 1 at p. 4).

The defendants, Major Felix Gordon and three John Does, are all correctional officers. Howe, who is white, claims that he and the African-American inmate who assaulted him had had a verbal confrontation prior to the assault (Dkt. 16 at p. 2); and Howe seems to believe that the assault was spurred by the prior confrontation coupled with a guard's public accusation that Howe had used a racial slur (Dkt. 16 at pp. 3, 6). Howe also alleges that Gordon admitted to deliberately placing the other inmate in Howe's cell (Dkt. 1 at p. 3; Dkt. 16 at p. 6). Howe has attached documents to his more definite statement indicating that he filed grievances against Gordon before the assault (Dkt. 16-1 at pp. 2, 8, 10, 11, 13, 17).

---

[1] Howe was confined in administrative segregation, so he did not have a cellmate (Dkt. 1 at p. 4; Dkt. 16 at pp. 2–3). Protocol required that he be placed in his cell and then put his hands through the food tray slot of his closed cell door so that the correctional officers could remove his handcuffs.

2

## II.  THE PLRA, RULE 12(c), AND QUALIFIED IMMUNITY

The complaint in this case is governed by the Prison Litigation Reform Act (the "PLRA"). Upon initial screening of a prisoner civil rights complaint, the PLRA requires a district court to scrutinize the claims and dismiss the complaint, in whole or in part, if it determines that the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted;" or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). A reviewing court may dismiss a complaint for these same reasons "at any time" where a party, like Howe, proceeds *in forma pauperis*. 28 U.S.C. § 1915(e)(2)(B) (mandating dismissal where the complaint is "frivolous or malicious," "fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief"). The PLRA also provides that the court "shall on its own motion or on the motion of a party dismiss an action" if it is satisfied that the complaint is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997e(c).

Howe is proceeding *pro se* in this case. Courts construe pleadings filed by *pro se* litigants under a less stringent standard of review. *Haines v. Kerner*, 404 U.S. 519 (1972) (per curiam). Under this standard, "[a] document filed *pro se* is 'to be liberally construed,' *Estelle* [*v. Gamble*, 429 U.S. 97, 106 (1976)], and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless,

3

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (observing that courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). That pleading standard is implicated by this motion, in which the defendants seek judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). The standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004). A complaint can be dismissed under Rule 12(b)(6) if the factual allegations it contains, taken as true, do not state a claim that is plausible on its face. *Amacker v. Renaissance Asset Mgmt., LLC*, 657 F.3d 252, 254 (5th Cir. 2011). As the Fifth Circuit has further clarified:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. This includes the basic requirement that the facts plausibly establish each required element for each legal claim. However, a complaint is insufficient if it offers only labels and conclusions, or a formulaic recitation of the elements of a cause of action.
> *Coleman v. Sweetin*, 745 F.3d 756, 763–64 (5th Cir. 2014) (quotation marks and citations omitted).

Additionally, the defendants' Rule 12(c) motion invokes the qualified immunity defense. "[A] plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal

4

specificity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). Until the plaintiff meets this pleading burden, no discovery is permitted. *Id.* ("One of the most salient benefits of qualified immunity is protection from pretrial discovery, which is costly, time-consuming, and intrusive[.]").

To defeat qualified immunity, the plaintiff must first show that the official's conduct violated a Constitutional right of the plaintiff. *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009). The plaintiff must then show that the Constitutional right was clearly established at the time of the violation. *Id.* For the right to have been clearly established for purposes of qualified immunity, the contours of the right must have been sufficiently clear that a reasonable official would have understood that what he was doing violated that right. *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008). The unlawfulness of the official's actions must have been readily apparent from sufficiently similar situations, though there need not have been commanding precedent holding the very action in question unlawful. *Id.* at 236–37.

If the plaintiff satisfies both prongs—i.e., if the official's actions violated a clearly established Constitutional right—the Court then asks whether qualified immunity is nevertheless appropriate because the official's actions were objectively reasonable in light of law that was clearly established at the time of the disputed action. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). Whether an official's conduct was objectively reasonable is a question of law for the Court, not one of fact for the jury. *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999). An official's actions must be

5

judged in light of the circumstances that confronted him and the facts that were available to him, without the benefit of hindsight. *Graham v. Connor*, 490 U.S. 386, 396–97 (1989); *Callahan*, 623 F.3d at 253; *Lampkin v. City of Nacogdoches*, 7 F.3d 430, 435 (5th Cir. 1993). Qualified immunity "establishes a high bar"—*Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013)—that protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Essentially, a plaintiff must demonstrate that no reasonable official could have believed that his actions were proper. *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994).

### III. **FAILURE TO PROTECT**

Howe's claims against the John Does are best characterized as claims for failure to protect him from the other inmate.

#### A. The legal standard

Under the Eighth Amendment, prisoners have a right to "humane conditions of confinement[,]" and prison officials are required to provide the prisoners with adequate food, shelter, clothing, and medical care. *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001) (quotation marks omitted). Prison officials must take reasonable measures to guarantee the safety of the inmates. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). However, the Eighth Amendment mandates *reasonable* safety, not *absolute* safety; and prison officials are not liable when they make good-faith errors in assessing a potential danger. *Newton v. Black*, 133 F.3d 301, 308 (5th Cir. 1998). Not every injury suffered by a prisoner translates into Constitutional liability for prison officials responsible for the

6

inmate's safety. *Farmer*, 511 U.S. at 834. Rather, Howe must show that the defendants were deliberately indifferent to his safety. *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976).

The standard for deliberate indifference is extremely high and requires more than a showing that the defendants were negligent or mistaken in their judgment. *Id.*; *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 1999). Establishing deliberate indifference, in fact, requires more even than a showing of gross negligence. *Whitley v. Hanna*, 726 F.3d 631, 641 (5th Cir. 2013) (pointing out that gross negligence is "a heightened degree of negligence" while deliberate indifference is "a lesser form of intent") (quotation marks omitted). To establish deliberate indifference in a prison conditions case, a prisoner must show that the prison officials: (1) were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn; and (2) actually drew an inference that such potential for harm existed. *Palmer v. Johnson*, 193 F.3d 346, 352 (5th Cir. 1999). The deliberate-indifference standard is designed to be stringent enough to separate acts or omissions that amount to intentional choices from those that are merely unintentionally negligent oversights. *Southard v. Tex. Bd. Of Criminal Justice*, 114 F.3d 539, 551 (5th Cir. 1997). To that end, it draws on the test for "subjective recklessness" used in criminal law, which "generally permits a finding of recklessness only when a person disregards a risk of harm of which he is aware" and does not permit such a finding based on mere "failure to alleviate a significant risk that [the person] should have perceived but did not[.]" *Farmer*, 511 U.S. at 836–40.

In short, it is not enough that Howe was attacked by the other inmate, or even (for the sake of argument) that the defendants were negligent in placing the other inmate in Howe's cell. In order to establish an Eighth Amendment violation, Howe must demonstrate that he was incarcerated under conditions posing a substantial risk of serious harm and that the defendants were deliberately indifferent to his need for protection. *Newton*, 133 F.3d at 308.

### B. Howe's claims against the John Does

Howe's original complaint alleges that two of the John Does "put [the] wrong inmate in [his] cell and didn't check [the] roster for the correct name and cell [number]" (Dkt. 1 at p. 3). The original complaint further alleges that the third John Doe was acting as the "picket officer"[2] and opened the door of Howe's cell; according to Howe, the third John Doe should have "check[ed the other] inmate['s] I.D. with [his] name to see where he belonged" before allowing the other two officers to put the inmate in Howe's cell (Dkt. 1 at p. 3). Howe's more definite statement essentially repeats these allegations (Dkt. 16 at p. 3).

Howe's claims against the John Does do not establish deliberate indifference. The basis of Howe's claims is that the John Does did not know, but should have known, that the other inmate was being placed in the wrong cell—which is (possibly) negligence, but not deliberate indifference. No factual allegation made by Howe shows that any of the John Does were aware of facts from which an inference of an excessive risk to Howe's

---

[2] A "picket officer" mans an electronic control panel that opens and closes the inmates' doors.

health or safety could be drawn and actually drew an inference that such potential for harm existed. To the contrary, Howe's factual allegations describe the portrait of an unintentionally negligent oversight. Howe has not pled sufficient facts to overcome the John Doe officers' qualified immunity.

## IV. **RETALIATION**

Howe's claims against Major Gordon, on the other hand, are best characterized as claims for retaliation.

### A. The legal standard

To state a claim for retaliation, an inmate must establish: (1) that he invoked a specific Constitutional right; (2) that the defendant intended to retaliate against him for his exercise of that right; (3) a particular retaliatory adverse act; and (4) that, but for the defendant's retaliatory motive, the complained-of adverse act would not have occurred. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997); *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995). "The relevant showing in such cases must be more than the prisoner's personal belief that he is the victim of retaliation." *Johnson*, 110 F.3d at 310 (quotation marks omitted). Proving retaliation entails carrying a "significant burden" and presenting more than mere conclusory allegations, and the court must "carefully scrutinize" the claim "with skepticism[.]" *Woods*, 60 F.3d at 1166. The inmate must present direct evidence of motive or, barring that, allege a chronology of events from which retaliation may be plausibly inferred. *Id.* And the prisoner's allegations of

causation must show more than "temporal proximity alone[.]" *Reese v. Skinner*, 322 Fed. App'x 381, 383 (5th Cir. 2009).

### B. Howe's claims against Major Gordon

Howe's claims against Major Gordon possess an element that his claims against the John Does lack: an alleged admission. Howe claims that, during a verbal confrontation about a month after he was assaulted by the other inmate, he asked Gordon "about putting that blk. man in [his] cell" (Dkt. 16 at p. 6). According to Howe, Gordon responded by saying, "Yes, and I'll do it again if you don't shut up" (Dkt. 16 at p. 6).

Even if sworn, this factual allegation might not stave off summary judgment in Gordon's favor. The Fifth Circuit has "repeatedly held that self-serving statements, without more, will not defeat a motion for summary judgment, particularly one supported by plentiful contrary evidence"—*Smith v. Southwestern Bell Tel. Co.*, 456 Fed. App'x 489, 492 (5th Cir. 2012)—and it is not at all clear, from a logistical standpoint, how Gordon allegedly carried out this attack against Howe. Nevertheless, at this stage, Howe's allegations must be liberally construed and taken as true, and Gordon's statement could be construed as an admission, made in the heat of an argument, that Gordon placed the other inmate in Howe's cell to hurt Howe because Howe had filed grievances against him. Such a retaliatory measure is Constitutionally actionable because it "would have deterred a person of ordinary firmness from exercising his First Amendment right to file grievances against prison officials." *Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006). Moreover, no reasonable correctional officer could have thought such a measure proper,

10

so Howe has pled sufficient facts to satisfy the standard articulated by the Fifth Circuit in *Backe*. *Cantu v. Jones*, 293 F.3d 839, 845 (5th Cir. 2002) ("The jury found that the appellants essentially orchestrated the attack. This is in no way reasonable behavior for a prison official.").

The Court will grant the John Doe defendants' Rule 12(c) motion but will deny Major Gordon's Rule 12(c) motion.

V.   **CONCLUSION**

Based on the foregoing, the Court **ORDERS** as follows:

1. The defendants' motion for judgment on the pleadings (Dkt. 71) is **GRANTED** as to all defendants except Major Felix Gordon. Gordon is the only defendant remaining.

2. The stay imposed by Judge Hoyt (Dkt. 75) is lifted. Within 30 days of the date of this order, the parties are to disclose to each other any information relevant to the claims or defenses of any party that has not previously been disclosed. The parties shall promptly file a notice of disclosure with the Court after such disclosure has taken place. No further discovery will be allowed except on further order of the Court.

3. Gordon must file any motion for summary judgment under Federal Rule of Civil Procedure 56 on or before January 15, 2018. Gordon shall submit, with a business records affidavit, copies of any documents relevant to Howe's claims and Gordon's defenses, including copies of any written TDCJ policies or written unit rules relevant to the alleged events forming the basis of this lawsuit. Howe will respond to any motion for summary judgment within 30 days of the date on which Gordon mailed Howe his copy, as shown on Gordon's certificate of service. Howe's failure to respond to Gordon's motion within the time limit may result in dismissal of this action for want of prosecution under Rule 41(b) of the Federal Rules of Civil Procedure.

4. Judge Hoyt's amended order to answer (Dkt. 57) continues to govern to the extent that it does not conflict with this order.

The Clerk is directed to provide a copy of this order to the parties.

SIGNED at Galveston, Texas on  October 13 , 2017.

*George C. Hanks Jr.*
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE